**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori Rankin, | No. CV11-464-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Lori Rankin appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on her appeal (Doc. #11).

**I.   Background**

**A.   Procedural Background**

Plaintiff, Lori Rankin, filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§405(g) & 1383(c)(3), in March of 2008, alleging disability since February 15, 2008. Administrative Law Judge (ALJ) Lauren R. Mathon issued an unfavorable decision on those applications on April 30, 2010. When the Appeals Council denied Plaintiff's request for review, she filed an appeal with this Court.

**B.     Medical Background**

1. Physical History

Plaintiff has a history of treatment for back pain and chronic obstructive pulmonary disease (COPD)/emphysema. On March 3, 2008, Plaintiff was prescribed a CPAP machine (a device to assist breathing while asleep). On April 2, 2008, MRI scan of the lumbar spine showed a bone contusion, but no displacement. Plaintiff was evaluated on June 24, 2008 by pain management specialist Dr. Albert Szu-Yun. Dr. Szu-Yun diagnosed Plaintiff as having cervicalgia, lumbago, and myalgia/myositis. She received prescriptions for Percocet and Robaxin at that time.

On June 14, 2008, medical consultant Neil Raaj Soni, M.D., conducted a thorough physical evaluation of Plaintiff and diagnosed her as having chronic low back pain with likely sacroiliac joint dysfunction and a questionable history of COPD. Plaintiff reported to Dr. Soni that she cooked, cleaned, washed dishes, was independent with her self care activities, drove, used the computer, and read. Plaintiff had some tenderness in the back, but her motor strength, sensations, and reflexes were normal. Dr. Soni opined that Plaintiff could occasionally lift and carry 50 pounds and frequently carry 25 pounds; could stand and walk for about six hours each during an eight-hour workday; had no restrictions with sitting; could occasionally bend, stoop, crawl or crouch; and had no manipulative, visual, communicative, or workplace environmental limitations.

Chest x-rays taken on June 13, 2008 demonstrated cardiac prominence without evidence of failure and probably posttraumatic changes involving several ribs on the right. On June 28, 2008, Plaintiff was administered a pulmonary function test; however, she gave inadequate effort. She reportedly experienced dizziness and fatigue at the time of her testing. It was noted that she continued to smoke 30 cigarettes a day, despite her pulmonary condition.

On July 22, 2008, Dr. Szu-Yun indicated that Plaintiff was stable and responding to treatment and medications. Plaintiff had no worsening of symptoms or new neurological deficits. She had no side effects from her medications.

After a careful examination of the evidence of record, but not a physical examination of Plaintiff, State agency physician Dr. Ernest Griffith concluded on July 31, 2008 that Plaintiff was capable of performing the full range of sedentary level functioning.

On August 14, 2008, x-rays of the right hip demonstrated moderate osteoarthritis. On August 18, 2008, Plaintiff was administered a lumbar paravertebral/facet joint steroid injection. On September 16, 2008, Plaintiff was administered a repeat lumbar paravertebral/facet joint steroid injection.

On December 2, 2008, treating physician Sheila Mane, M.D., completed a medical source statement and opined that Plaintiff could sit for two hours during an eight-hour workday; could stand and walk for one hour each during an eight hour workday; could occasionally lift and carry five pounds; could not squat, climb, push and pull controls, or do fine manipulation with her upper extremities; was restricted from working at unprotected heights, being around moving machinery, being exposed to dust/fumes/gases, and being exposed to marked changes in temperature. Dr. Mane opined that Plaintiff's limitations were due to pain.

On December 9, 2008, pain specialist Dr. Albert Yeh examined Plaintiff and indicated that she had pain over the lumbar spine due to radiculitis. Plaintiff was continued on her medication regimen, including steroid injections. It was noted that Plaintiff continued to smoke a pack a day and that she had not lost any weight in an attempt to alleviate her back symptoms. Plaintiff was administered a caudal epidural steroid injection at that time. On January 6, 2009, Dr. Yeh indicated that Plaintiff was stable and responding to treatment and medications. Plaintiff had no worsening of symptoms or new neurological deficits. On February 3, 2009, Plaintiff reported that she had 75 percent relief of pain from the previous epidural injection and was administered a repeat caudal epidural steroid injection.

On June 30, 2009, neurologist Ronald S. Bennett, M.D., evaluated Plaintiff, on referral, for neck pain. On exam, Plaintiff appeared depressed, but her cognitive issues were very normal and she was of high intelligence. Dr. Bennett noted that she weighed 340 pounds at the time and continued to smoke. Examination of the neck revealed a positive

spurling sign on the left, which appeared to evoke a C7 radiculopathy. An EMG/NCV study was recommended. On July 14, 2009, EMG/NCV study revealed no carpal tunnel syndrome bilaterally, but there was evidence for slowing of ulnar nerve transmission across the left elbow. There was evidence for a subacute C7 radiculopathy on the left.

MRI scan of the cervical spine performed on August 17, 2009 showed minimal degenerative disc disease at C5-C6 and C6-C7. There was no evidence of disc herniation or cord compression. There was no evidence of neural foraminal compromise or nerve root impingement.

From June 2009 through December 2009, Plaintiff was treated through a pain management specialist for neck and back pain, and was administered several cervical facet injections and lumbar epidural steroid injections throughout her treatment. Her symptoms improved with treatment. In December 2009, Plaintiff reported that she was satisfied with her medications and wanted no changes at that time. She also had no new complaints and there was no change in her usual symptoms. Plaintiff also declined an increase in narcotics at that time.

From February 2008 to January 2010, treating physician Dr. Mane treated Plaintiff conservatively for low back pain, neck pain, foot pain (with heel spurs), COPD, and hypertension. In September 2008, Dr. Mane noted that Plaintiff needed a new oxygen concentrator for her breathing and prescribed one. Through her treatment, Plaintiff's weight fluctuated. On January 29, 2010, Plaintiff's weight was recorded at 340 pounds. On the same date, Dr. Mane completed a medical source statement and opined that Plaintiff had a less than sedentary residual functional capacity assessment as a result of pain.

From January 2010 to February 2010, Plaintiff received physical therapy for back pain and had improvement in symptoms.

2. Mental History

On June 6, 2008, medical consultant Heather M. Nash, Ph.D., conducted an evaluation of Plaintiff and diagnosed her as having adjustment disorder with anxiety and depressed mood. Dr. Nash concluded that Plaintiff's mental health deficits were unlikely to prevent her

1  from sustaining gainful employment for the next 12 months because she exhibited no
2  problems inattention/concentration, memory, understanding, social skills or judgment.
3  Plaintiff had mild impairment in coping skills.

After careful examination of the medical evidence and all the other evidence in the record, State agency physician Brady Dalton, Psy.D., concluded that Plaintiff had no severe mental impairment. Dr. Dalton did not examine Plaintiff.

Plaintiff received intermittent treatment for depression at Mohave Mental Health from October 2008 to December 2009. Treatment notes from Mohave Mental Health showed that Plaintiff generally had mild to moderate symptoms throughout her treatment as noted by her global assessment of functioning (GAF) scores. Plaintiff had a moderate GAF score of 55 in October 2008, mild to moderate GAF score of 60-65 in March 2009, mild to moderate GAF score of 60-65 in June 2009, mild to moderate GAF score of 60-65 in September 2009, moderate score of 60 in October 2009, and moderate GAF score of 58 in December 2009.

On December 9, 2008, counselor Patricia Marko, MSW, completed a mental residual functional capacity of assessment of Plaintiff and opined that Plaintiff had marked limitations in her ability to make judgments on simple work related decisions and respond appropriately to work pressures in a usual work setting. Ms. Marko wrote that Plaintiff was unable to get out of bed or go out in public due to depression and that Plaintiff had no motivation, low patience, and low tolerance.

## II. Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not

substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)(internal quotation omitted).

### III. Discussion

To qualify for disability benefits under the Social Security Act a claimant must show, among other things, that she is "under a disability." 42 U.S.C. §423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §423(d)(2)(A).

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. §404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. §404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. §404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the

- 6 -

1 claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c).
2 Basic work activities are the "abilities and aptitudes to do most jobs," for example: lifting;
3 carrying; reaching; understanding, carrying out and remembering simple instructions;
4 responding appropriately to co-workers; and dealing with changes in routine. 20 C.F.R.
5 §404.1521(b). Further, the impairment must either be expected "to result in death" or "to last
6 for a continuous period of twelve months." 20 C.F.R. §404.1509 (incorporated by reference
7 in 20 C.F.R. §404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device
8 to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If
9 the claimant does not have a severe impairment, the claimant is not disabled.

10     3. Having found a severe impairment, the ALJ next determines whether the
11 impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R.
12 §404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not,
13 before proceeding to the next step, the ALJ will make a finding regarding the claimant's
14 "residual functional capacity based on all the relevant medical and other evidence in [the]
15 record." 20 C.F.R. §404.1520(e). A claimant's "residual functional capacity" is the most she
16 can do despite all her impairments, including those that are not severe, and any related
17 symptoms. 20 C.F.R. §404.1545(a)(1).

18     4. At step four, the ALJ determines whether, despite the impairments, the claimant
19 can still perform "past relevant work." 20 C.F.R. §404.1520(a)(4)(iv). To make this
20 determination, the ALJ compares its "residual functional capacity assessment . . . with the
21 physical and mental demands of [the claimant's] past relevant work." 20 C.F.R.
22 §404.1520(f). If the claimant can still perform the kind of work she previously did, the
23 claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

24     5. At the final step, the ALJ determines whether the claimant "can make an
25 adjustment to other work" that exists in the national economy. 20 C.F.R. §404.1520(a)(4)(v).
26 In making this determination, the ALJ considers the claimant's "residual functional capacity"
27 and her "age, education, and work experience." 20 C.F.R. §404.1520(g)(1). If the claimant
28 can perform other work, she is not disabled. If the claimant cannot perform other work, she

1 will be found disabled. As previously noted, the Commissioner has the burden of proving
2 the claimant can perform other work. *Reddick*, 157 F.3d at 721.

3 In this case, the ALJ concluded at step five of the sequential process that Plaintiff was not disabled. The ALJ found that Plaintiff had the residual functional capacity to perform the full range of sedentary work, as defined in 20 C.F.R. §404.1567(a) and 416.967(a). The ALJ found that Plaintiff could stand and walk at least two hours each at a time during an 8-hour work day; could sit for about 6 hours during an 8-hour workday; could occasionally climb ramp/stairs, balance, stoop, kneel and crouch; that Plaintiff was precluded from climbing ladder/rope/scaffolds, and crawling; that Plaintiff should avoid concentrated exposure to extreme heat, unprotected heights, and hazardous machines due to morbid obesity; that Plaintiff should avoid even moderate exposure to fumes, odors, chemicals, dust, gases, and poor ventilation due to COPD/emphysema; and that Plaintiff had no mental impairment. The ALJ further found that given Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

On appeal, Plaintiff alleges that the ALJ erred in: misinterpreting evidence to the detriment of Plaintiff; rejecting the opinion of a treating source, Dr. Mane; and in rejecting the opinion of the counselor at Mohave Mental Health. Based on these errors, Plaintiff asks the Court to remand for an award of benefits.

**A.     Misinterpretation of the Evidence**

Plaintiff argues that the ALJ erred in misinterpreting and failing to consider all the evidence of her respiratory problems. Plaintiff contends that her results from the lung capacity test indicated a FEV1 finding that would meet the listing for disability in 20 C.F.R. 404.1599 Subpart P Appendix 1, 3.02. She further argues that the severity of her respiratory problems is substantiated by her treatment – inhalers and supplementary oxygen.

But the ALJ explained that she rejected the lung capacity test results because the examiner noted that Plaintiff did not give adequate effort. And, as indicated by the medical records, Plaintiff's treatment for COPD was fairly conservative. Moreover, as the ALJ noted,

- 8 -

1 Plaintiff continued to smoke, even at the time of the hearing. If Plaintiff's respiratory 2 problems were disabling, then presumably she would not continue smoking. *See Bray v.* 3 *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)(ALJ's finding that the 4 claimant continued to smoke up until one month before the hearing, despite complaining of 5 debilitating shortness of breath and acute chemical sensitivity, supported a finding of not 6 disabled).

7 The ALJ's opinion demonstrates that she carefully considered the evidence regarding 8 Plaintiff's respiratory problems, and that the ALJ even placed restrictions on Plaintiff's 9 working environment – i.e., avoiding exposure to fumes, odors, chemicals, dust, gases, and 10 poor ventilation – because of those problems. The Court finds that substantial evidence in 11 the record supports the ALJ's findings regarding Plaintiff's respiratory problems and that the 12 ALJ did not err in evaluating the evidence.

### B. Treating Physician Opinion

14 Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Mane, a treating 15 physician, who opined that Plaintiff could not sustain full-time employment due to her pain. 16 By rule, the Social Security Administration favors treating physician opinions over non-17 treating physicians. *Orn*, 495 F.3d at 631 (citing 20 C.F.R. §404.1527). In addition, the 18 Administration favors examining physician opinions over opinions of non-examining 19 physicians. *Id.*

20 If a treating physician's opinion is well-supported by medically acceptable clinical and 21 laboratory diagnostic techniques and is not inconsistent with the other substantial evidence 22 in the case, then it is given "controlling weight." *Id.* If a treating physician's opinion is not 23 sufficiently supported by medical evidence and other substantial evidence in the case, 24 however, the ALJ need not give the opinion controlling weight. *Id.* Further, even when a 25 treating doctor's opinion is given the most weight in a disability case, the opinion is not 26 binding on the ALJ regarding the existence of an impairment or the ultimate determination 27 of disability. *Batson*, 359 F.3d at 1195.

28 If the treating doctor's opinion is contradicted by another doctor, the ALJ may reject

- 9 -

1 the treating doctor's opinion by giving specific and legitimate reasons for doing so. *Orn*, 495 F.3d at 632. An ALJ meets her burden of providing specific and legitimate reasons for rejecting a treating physician's opinion if the ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Id*.

Both Dr. Soni, who examined the patient, and Dr. Griffith, who reviewed Plaintiff's medical files, opined that Plaintiff was capable of sustaining work at the sedentary level, which contradicts Dr. Mane's assessments. Because Dr. Mane's opinions were contradicted, the ALJ only had to give specific and legitimate reasons for rejecting her opinions. *Id*. The Court finds that the ALJ did that by setting out a thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Id*. The Court holds that the ALJ properly considered and weighed the medical evidence in this case. Moreover, when the evidence supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Batson*, 359 F.3d at 1196.

### C.  **Social Worker Opinion**

Plaintiff argues that the ALJ erred in rejecting Plaintiff's treating therapist's opinion that Plaintiff's psychological issues would prevent her from sustaining employment. As a social worker, Ms. Marko is not considered an "acceptable medical source[ ]" under the regulations. 20 C.F.R. § 404.1513(a), (d). The regulations treat therapists and social workers as "other sources." 20 C.F.R. § 404.1513(d)(1), (3).

The opinions of "other sources" cannot establish a medical impairment. *Id.* §§404.1513(a), (d). And the ALJ may disregard other source opinions if the ALJ gives reasons germane to each source for doing so. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir.2010). The ALJ here disregarded Ms. Marko's opinion and found that Plaintiff did not have a debilitating mental impairment because: 1) examining consultant, Heather Nash, Ph.D, concluded that Plaintiff's mental impairments would not preclude her from sustaining gainful employment for the next twelve months; 2) state agency physician Brady Dalton, Psy.D., concluded that Plaintiff did not have a severe mental impairment; 3)

Plaintiff's GAF's scores from Mohave Mental Health show only mild to moderate symptoms throughout her treatment; and 4) Plaintiff was able to engage in multiple activities. The Court finds that the ALJ gave germane reasons for and did not err in rejecting the opinion of Ms. Marko.

Plaintiff notes, and the Commissioner concedes, that the ALJ did not discuss Dr. Mane's assessment that Plaintiff had marked limitations in many areas of mental functioning. But an ALJ does not err if she fails to mention in her decision the opinion of a doctor that is not significant or probative. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003). Dr. Mane did not treat Plaintiff primarily for depression or anxiety, and Dr. Mane's residual functional capacity assessment is not supported by any notes or treatment records. The Court finds that Dr. Mane's single mental capacity assessment, without any substantiating treatment notes or other records, is not significant or probative evidence of Plaintiff's mental condition. The ALJ therefore did not err in failing to discuss Dr. Mane's mental impairment assessment.

But even if the ALJ did err in not specifically addressing Dr. Mane's assessment, that error was harmless. And the Court will still uphold an ALJ's decision if the ALJ's error was harmless. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir.2010). Even if the ALJ had discussed and given some weight to Dr. Mane's mental evaluation, substantial evidence would still support the ALJ's finding of no severe mental impairment. Any potential error therefore does not warrant reversal.

Accordingly,

**IT IS ORDERED** affirming the Commissioner's denial of benefits.

DATED this 5th day of March, 2012.

James A. Teilborg
United States District Judge